May it please the Court, I'm Amber Fletcher, appearing on behalf of Petitioner Susana Pinhas. This is a pre-Real ID Act case in which the petitioner was found credible by the immigration judge and the Board of Immigration Appeals, so her statements, her testimony are to be taken as true. One of the issues before this Court is whether she was harmed or would be harmed on account of membership in a particular social group. Social group membership is as necessary for withholding of removal as it is for asylum. You agree? I do agree. It's the same standard, same definitions. I would argue that the standard of review that should be applied to this question by this Court would be de novo, as it is a mixed question of law and fact. But my first point about that is that the Board, in its decision, failed to apply the voluntary associational test as is required under the case law of this circuit. Instead, the Board only applied the ACOSTA test, which is the immutable characteristic approach. Well, but the ACOSTA test has immutable characteristic tests, which can be either innate or acquired, because ACOSTA referred to, I think it was certain military officers. Exactly. That's an acquired characteristic. Exactly. So what's wrong with that? The only thing that's wrong with that is if the Board finds that a social group, a proposed social group doesn't meet the ACOSTA test under the Ninth Circuit, it's supposed to go on and consider a voluntary associational. It's supposed to consider social visibility and particularity, correct? That's correct, under both tests. Are you familiar with the case of Enriquez-Rivas? Of which? Enriquez-Rivas. I'm not, Your Honor. That I know of. Well, that's a case that was taken in Bank and is presently in Bank and considering those issues of what is social visibility and what is particularity with respect to a group. In that case, it was with respect to a Guatemalan woman who testified against the MS-13 gang. Oh, I am familiar with that, Your Honor, yes. Why shouldn't we just wait on that issue until Enriquez-Rivas comes out and see if there are any guidelines that would affect this case? I think that I have no position on that. I think that that would make sense. But I do think that even under the ACOSTA test here, Ms. Pinhas has shown that she belongs to a particular social group even under that approach. Her status as a former informant is immutable. She can't change the past. And this proposed group of informants or snitches, former informants, does meet the visibility test. I think it does. How does it meet the visibility test? The visibility test is not about whether walking down the street someone can tell that you're in a particular group. It's whether the group is cognizable or recognized by the society. I believe the language in the case law is whether members of society recognize the characteristic that joins members of the group, not whether they recognize members of the group necessarily. And in this case, it's clear from the record that this is a cognizable, recognized group in Peru. The persecutors themselves called her a snitch. They invoked the term. Also in the record, there are country conditions documentary evidence that refer to informants. This is a group that is known, that is regarded as a group in Peru and in other countries. And so actually, Your Honor, I would say regarding the case that's pending a decision on Bonk, I think actually this Ms. Pinhas has shown that she meets the ACOSTA test already. I'm not so sure that it's necessary to wait for further articulation of how the visibility issue will be resolved in terms of a gang case. Well, probably whatever happens, it would be important for the VIA and the IJ to apply the standards articulated in Regas-Rivas to this situation, especially as I understand it, there's an intervening case law that says that the one-year bar now begins on the last arrival. And so her asylum claim is no longer time barred. I believe the government concedes that. So this discussion is relevant for both her asylum claim, which is going to have to be reconsidered, as well as the withholding claim. Correct. I mean, the other issue on the asylum, the other reason it was denied before, was because of any exercise of discretion. And the only issue before this Court, of course, on that, is whether the agency applied the correct standard. And it's our position that they did not. Because they didn't discuss all the factors? Correct, Your Honor. And the Board, in its decision, mischaracterized the facts in this case and said that when she was using the documents that she used to travel, it was not in a context of flight from persecution, when, in fact, it's clear from the record that it was. So that's a factual mistake in that. There's no question that the Board, in evaluating the asylum claim, didn't discuss all these factors. But when I read the I.J. opinion as a whole, it seems to me that the I.J. does discuss the factors, not under the asylum. But, for instance, you'd agree with me the I.J. discusses the assistance to the DEA. Of course, that's discussed. And he also discusses that she only got the documents to see her ailing father. He discusses that she faced the risk of persecution if she returned. Yes. So, given that he did all of that, I guess I'm trying to figure out why he wouldn't have weighed the assistance of the government in her favor in allowing her withholding. That is my question as well, Your Honor. I agree that all that's addressed in the I.J. decision. So if it's addressed, all the factors are addressed, how can I suggest that the I.J. abused its discretion in denying asylum on the discretionary grounds? The way I read the I.J. decision is, to the extent that's even before this Court, is that it traces the way the statute is written. First, you establish statutory eligibility for asylum, if you can. And then the Court considers discretion separately. And in that discretionary consideration, they have to weigh all the factors. In the I.J.'s decision, all those factors aren't weighed when he's talking about discretion. It reads more like a sort of per se bar, like in Pula and Gula, the cases on discretion cited in the briefing, where it's almost like a per se bar because of her use of false documents. Is it your position that when discussing the discretionary ruling, it's required that the I.J. in the same paragraph mention all the favorable factors and all the unfavorable factors, or? Or in some ways satisfactorily. In the same paragraph. Suppose he discusses all the favorable factors at one point, and then later in his opinion finds the unfavorable factors. They could be incorporated by reference, of course. But they need to be considered explicitly. He describes all the facts, and then he gets to this, like, paragraph where he says, but uses some really unseemly language about Gaul and all this stuff, and it seems to be weighing. What he's not doing is weighing. So he's put all those factors there. But then at the end, the only factor that he weighs and seems to give all the weight to is the false documents. And what does he say? He says something really he says. The temerity in Gaul. The temerity in Gaul. The utter disregard for the U.S. laws, which actually shows that he's not weighing all the factors because it's not an utter disregard. She helped enforce U.S. law. Right. That's what I was getting to. She's not weighing this using the false passport to go see her dying father and coming back in the country against all the help she's done to enforce. It's a substantial risk to herself to enforce the laws of the United States in her country. Exactly, Your Honor. That's our position. Does Hosini, it seems to me the government's arguing, and maybe I don't know how to say this case, H-O-S-S-E-I-N-I, Hosini, it seems to me the government says that Hosini really says when it has to do with fraud you don't have to balance the factors. Oh, Your Honor, I think under Pula and Gula all the factors have to be balanced, and that's the way it's done on the ground in immigration court every time I go there. There's no per se rule. There's no bar. It's not in the statute. It's not in the case law. There's no bar or de facto bar that arises because of the use of fraudulent documents. And, in fact, under Tursios, this court's case in Tursios, I believe it's called, this court looks at the fact that people are fleeing from persecution when thinking about, I think that goes more to credibility in that case, but the fact that someone is fleeing from persecution sometimes is proven in a way and their evidence towards that is that someone used fake documents because people have to do what they have to do to get to safety. And Hosini is factually distinguishable, too, because he wasn't just using a false document to enter the country. He committed substantial uncontested evidence that Hosini committed immigration fraud by filing two false asylum applications, which is not what was done here. And that is a bar. That is a bar. That's right. That's the frivolous bar, after IRAIRA, at least. But I would like to also address the Board's finding that the persecutors in this case were motivated only by revenge. This ignores this circuit's case law on mixed motive in pre-Real ID Act cases. Under Borja, all Mrs. Pinhas was required to show was evidence from which it's reasonable for her to conclude that she was or would be persecuted, at least in part, on account of a protected ground. And the Board nowhere addresses that in its decision. And I think any reasonable person, fact finder or not, in Mrs. Pinhas' situation, where she has ratted out drug dealers to the U.S. government, is going to receive phone calls like that and feel under threat and reasonably believe that that is because the drug traffickers want to deter and punish people for being informants. And, in fact, that's what's borne out in the record, I believe at page 62, in the affidavit from a former DEA agent who says, when they call you a snitch, that's how they let people know, here's what happens when you are an informant. And that seems to be a deterrence-type motivation, not just revenge-type motivation. She's out of the country. They still kept calling her. Also, I wanted to point out that the Board's decision about whether she established a clear probability of future persecution, again, anyone would perceive a threat in Mrs. Pinhas' situation. There was no attempt to harm her because she left so quickly after receiving the threat. She got out of there really quickly. And the calls stopped in 1999 because it was clear to the drug traffickers she had already left the country. She was out of reach. She was no longer informing against them. And, again, the former DEA agent who supplied a statement in this case stated that drug traffickers have long memories, and that's not disputed in the record. And I'd like to reserve a balance of my time, if I may. Before you sit down, I'm making sure cat relief is off the record, waived. It wasn't raised in the opening brief. I just wanted to make sure. Right. Our office didn't brief this case. I read it both ways. There's something, I think, in the Board brief from Petitioner that says it's waived and then it's briefed. I mean, to the extent this Court decides that it's not waived, I think there's some evidence in the record about government acquiescence here. But that's not my main point of argument today. Thank you. Good morning, Your Honors. Good morning. May it please the Court, Kylie Keene on behalf of the Attorney General. I'm going to start by discussing the Henricus Rivas on Bonk, forthcoming on Bonk decision. And although I don't feel strongly, I guess one way or other, whether the Court would hold it, I do want to just indicate that there's an alternative. There's a way to rule on this case without reaching the social group issue, so to the extent that it, you know, wouldn't need to be delayed for that decision. And that is that, as we just heard, the Board made this finding that she would not suffer a clear probability of future persecution, separate and apart from the social group issue. And that was premised on the fact that she had not been harmed in the past and that the phone calls had ended. But that's withholding, right? That's the standard for withholding? Yes. That her asylum claim has life. Her asylum claim does not have life, Your Honor, because the discretionary determination is wholly dispositive of that. It only has life if we agree with you on that. Right. Just a minute. Just a minute. There's one thing that counsel didn't bring forward. Okay. I didn't necessarily want to prompt her as to what I thought, but it seems to me that it's a hard thing for me to decide what to do with withholding when I might have an asylum claim, and if I do have an asylum claim, they have a past persecution, which is a presumption. So she isn't going to have to prove any chance of future persecution. If she has an asylum claim, she would have a presumption that then the government would have to overbear. I don't actually, Your Honor, see that the immigration judge made a determination that she suffered past persecution. Well, I know that. But if, in fact, she has an asylum claim, she would have past persecution. Well, she could put forth evidence that she established past persecution. If she has an asylum claim and she's granted asylum, she gets past persecution, right? No. No, Your Honor. Okay. So you're suggesting she can get an asylum declaration without establishing past persecution? I'm not sure what you mean by asylum declaration. Well, get a claim. Get the claim. I mean, what you're suggesting is that discretionarily I can come out in a different way. But if, in fact, I need to go back for the factors, and I need to go back because of Gula to have the factors elucidated, it seems to me I wouldn't want to get too big on the withholding claim either, because at that point, the I.J. might suggest that she does have past persecution, and, therefore, she'd have a presumption. Right. I think I'm understanding now. If the case goes back, she has the ability to put forth the evidence for the asylum claim that she was barred from doing because the law at the time was unclear about the one-year issue. Exactly. That's different, though, from what I think what I was hearing you say, which is that she's established past persecution, which gives her a presumption. Whatever. She has not done that. But Joseph was just saying she can pursue a claim. There's a viable right. There's an application to be had that needs to be heard on the merits. And also, how does it weigh in that she's been found credible? She's had her criminal defense attorney, Evan Ginesse, talk to the DEA. They say she helped. Her story, it's not a made-up story. It's a highly credible story. What was the role of Rosalyn Wang in this? She was the so she was the AUSA who was prosecuting Ms. Pinhaus' criminal proceedings for defrauding the United States government, immigration fraud. So her role was that she had evidence, a statement that was evidencing that she had helped the DEA, that she heard from someone else who talked to the DEA. She had a statement as to that effect, too. Yes. And the immigration judge said that although Ms. Pinhaus' testimony might otherwise be questionable because of the immigration fraud that she's perpetrated, Ms. Wang's statement and Ms. Ginesse's statement come into corroborate that she did, in fact, you know, help the DEA in Peru. So that's not a question. I should just disclose, Rosalyn Wang was a former law clerk of mine, and I actually hired Evan Ginesse to help me admire. Oh. So you remember them. Then they are people of high integrity. So, yes.  So I can see why that bolstered the claim. Right. Their statements were credited. And the immigration judge said that those statements did, in fact, corroborate that she had informed with the DEA back in the 90s. But I guess, more to my point, if I can just return to the fact that the social group, if the Court agrees on the discretionary finding, perhaps I should say something about that, because I'm getting the impression that maybe you don't agree that that finding could be upheld. But in the event that it is upheld, there's no reason for the case to go back with regard to asylum, and the withholding claim does not need to reach the social group aspect or be held for Henricus Rivas, because the immigration judge, you know, articulated the reasons, ample reasons, as he put it, that they could be denied on these grounds, and the Board seized on those and said, in fact, should be denied on those grounds. Right. But you do agree there, and case law says that just using a fraudulent document to enter is not. Right. Oh, yes. It cannot be weighed so heavily. Yes. But there's a couple things I want to say about that. First of all, with regard to the immigration judge saying that she had the temerity in Gaul, the immigration judge was not speaking to her using the documents to flee persecution. The temerity in the Gaul was the fact that she used her fraudulent passport to emigrate her husband, who's an Israeli citizen, to the United States, and that that, in fact, is another fraud perpetrated on the United States that has nothing to do with her fleeing persecution. And we also have the immigration judge talking about the trips, personal trips, that she made outside the country using the fraudulent passport. I am bothering to hide her identity, if you credit her testimony. And the immigration judge considered that on the record. The immigration judge explicitly talked about. But not when he was actually weighing the. . . He really did a poor job in that discretionary decision. I mean, I know, I know. It was really poor. And the BIA didn't do much better to make a strong finding. It's a very weak kind of throwaway part of this whole thing. I think what I can say about that is, just to remind Your Honors, that the immigration judge didn't issue a written decision in this case. So after the testimony is heard, several hours of testimony, the immigration judge is saying there's an oral decision off the cuff immediately. You know, so I understand that we would have liked this to be a little bit more clean and perhaps to take the factors that he had talked about previously and incorporate it into as Your Honor was speaking to the same paragraph. Okay. That would have been great. That would have been nice. But the question is whether this decision passes that scrutiny. Was there an abuse of discretion here simply because the immigration judge discussed the factors earlier in his oral decision rather than in the portion of the decision where he says, ultimately, I'm going to deny because of the immigration fraud you've perpetrated on the State? Immigration fraud that goes above and beyond entering the United States clean persecution. So what was the result of the criminal prosecution? No, that's not in the record, but it is in Ms. Penhas' opening brief and a footnote. It's probably a public record. Yes, she was convicted of misdemeanor. It is a felony violation, but because of her cooperation with the DEA, Ms. Wayne ultimately charged and convicted her of a misdemeanor. Okay. For immigration fraud. For immigration fraud. Right. And then did she serve time for that? That I don't know. Okay. That's not in the record? Yeah, that's correct. Okay. And what is her status now? Is she in this country? She's here, as far as I know. She had a stay of removal from the court, so she's not been removed. Whether or not she's back in Peru or wherever, I don't know that, as a matter of fact. But she has a stay. Have you discussed at all mediating this particular claim? In fact, yesterday I was approached by counsel about potential mediation for a slightly different issue, an S visa, which is a visa that's used for law enforcement agents who have informants, alien informants. And I indicated to Ms. Fletcher that we would not agree to that because there's no indication. So as background, the DEA would be the one that would have to petition on her behalf to get that S visa. And there's some requirements that she doesn't appear to meet that are in the statute, one of which is that the DEA would have to show to USCIS that her presence in the United States is necessary for, you know, and I can get the exact language. Kagan. Prosecution. Yeah. Prosecution or even investigation. I don't think she necessarily has to testify in court to get the S visa, but she has to the DEA would have to show that her continued presence in the United States is necessary to further, you know, a legitimate investigation or prosecution. Now, she hasn't had contact with the DEA since 1997. So, you know, in our view, the likelihood that the DEA 15 years later would petition on her behalf for an investigation that she's no longer, you know, part of I think is unlikely, and that's why the government indicated this morning as well as last night that we would not seek to agree to mediation for that purpose. Now, with regard to more general prosecutorial discretion, which is maybe what your question was more targeted toward, Ms. Pinhas does not meet the requirements because she's actually on the list. So the factors that they consider are there's like a negative factor and the positive factor. She's on the negative factors because she has a criminal conviction for immigration fraud, which puts her in the enforcement priority category rather than category eligible for potential prosecutorial discretion. So the Department is not likely to grant her based not only on the criminal conviction itself, but also on these other factors, the fact that she used her United States passport to go to Italy, to go to Holland, to go to France, to immigrate her Israeli husband to the United States. These factors weigh in. You know, it's not just the fact that she was fleeing persecution, but that she continued to use her false United States identity for personal benefit as well as the benefit of her husband. So I think it's highly unlikely the Department would exercise discretion in this case under sort of the general prosecutorial guidelines. Is your argument as to the discretionary grounds that the IJ did a good job of balancing the factors, or are you arguing that because of its, because of Houssini and the fraud issue that one doesn't have to balance the factors? Oh, yes. I did want to address that as you had brought it up prior. To the extent that it came across that way in the brief, saying that he wouldn't have to balance the factors, that's not the government's argument. I think that was in the reply brief, where they were saying Houssini doesn't stand for the proposition that the factors don't have to be weighed. That is not the government's argument. Houssini was cited because of the similarity in the fact that there was immigration fraud perpetrated throughout Houssini as well as Ms. Pinas's case, and in both cases they purchased fraudulent or not fraudulent, they purchased legitimate birth certificates and then used that to obtain a fraudulent passport. That was a factor in both cases. And I do also want to point the Court to the matter of Pula, which is the Board's decision discussing the factors to be considered in an asylum discretion determination. And because the Board talks, it says the use of fraudulent documents to escape the country of persecution itself is not a significant adverse factor, while at the other extreme, entry under an assumed identity of a United States citizen with the United States passport, which was fraudulently obtained by the alien from the United States government, is very serious fraud. And that's really, I think, what the immigration judge is getting at. The weighing of the factors happens, you know, in the facts section and the section concerning some of these other collateral issues to the case, perhaps not in the exact same section that's talking about asylum, but knowing the Board's precedent that assuming United States identity is extreme serious fraud that weighs against granting. Because remember that asylum leads to permanent residency, which leads to citizenship. So here we have the immigration judge saying she's already perpetrated fraud, assuming United States identity, emigrating her husband here under those, you know, using the fraudulent passport to do so, and not rewarding her with asylum, which leads to citizenship, would contravene the purpose of having these immigration laws that bar someone from obtaining United States identity. I mean, it's fraudulent to do so, and we should not reward someone by granting them citizenship after an asylum application is granted. The problem, you know, in the end, she may not prevail, but the way this was considered, her asylum claim wasn't even fully heard. So if it were fully heard, we don't even know how the IJ would react to the whole story at this point. Well, we know he would deny it as a matter of discretion. Well, we don't know because there's more things she could have put in on asylum than she may have put in because she was time-barred on the asylum claim. Well, in fact, though, this determination that the application was time-barred didn't come until after the hearing. It's not as if counsel was withholding some evidence that would have bolstered her claim. We don't have any evidence of that in the record. She put forth her full case. And, in fact, she needed to do so because she had to reach the higher burden for withholding of removal. I mean, it wouldn't make sense for her to hold back because the asylum was time-barred when withholding carries with it a higher burden. I don't see that there was any holding back, if you will, of putting forth evidence in the case. And, in fact, she's credible. So the story itself is compelling. I mean, I'm not without conflict myself here because she's a complicated person. I mean, she's done really great things for the United States, but then since coming to the United States legally, she's done some really bad things, things that are actually felonies under the law. And she was, you know, convicted of a misdemeanor, pled down because of the good things she had done for the United States in the 90s. So I'm not without sympathy that she's a complex case. This is a complex case, and that she's the actions she's taken are complex. Some of them are really great. Some of them are actually very serious. So I do want to note that. It's – I can see how different adjudicators could come out different on this issue. Unless you have any more questions, I yield the rest of the time back to the Court. Thank you very much. Thank you. Just to clarify a couple things. The same regulatory presumption based on past persecution also applies in the withholding context, not limited to asylum. And it is true that past persecution is not required for asylum or withholding. It can be based independently on a well-founded fear or a clear probability of future persecution. Also, even if Ms. Pinhaus is granted asylum, ultimately she would not be rewarded, to use the government's word, with green card status or citizenship. She is barred from that, and there is no waiver to the bar based on a false claim to U.S. citizenship. She would only have asylum, and that is it ever, unless the law changes. So an asylum I wouldn't characterize as a reward. It's a form of protection mandated by domestic and international law. I would like to request that this Court send this case – refer this case for mediation. I think the situation here is kind of outrageous, even given Ms. Pinhaus' fraud. What she did was, without warning, without protection, without training or compensation, she aided the DEA in the war on drugs in Peru. For three years, she put herself at risk. She had to flee because of that risk when she tried to contact her agent assigned to her. His phone was disconnected. He never responded to her. Now the government wants to deport her. It's outrageous. I think at a minimum, if this Court could refer the matter for mediation, even if she doesn't – isn't technically on the low-priority list for prosecutorial discretion, we could still request it. Also, the mediation cannot proceed because the mediation petition has to be filed by DEA, not by the Attorney General. For an S visa. For a visa. Right, but for deferred action or prosecutorial discretion, the DEA would not be required to participate. Is that right? The DEA doesn't have to participate? No, I'm sure. For prosecutorial discretion, that would be the Department of Homeland Security. For the S visa, the DEA would have to petition on behalf of them. Exactly. Okay. All right. Well, thank you very much, counsel. Excellent arguments on both sides. Thank you.
judges: Wardlaw, Bea, Smith